Welch, J.
I cannot concur in this opinion. It is a departure from well-established principles of law, and calculated to work no public good.
I do not deny that punitive damages may be inflicted upon the person actually guilty of a malicious or wanton wrong • nor that the jury may, in their estimate of such damages, include attorneys’ fees paid by the party aggrieved, as was held in Roberts v. Mason, 10 Ohio St. 277.
Nor do I deny that the master is equally liable for the wrongful acts of his sei-vant, done in the scope of his employment, whether they be done wilfully and wantonly, or through mere carelessness. In the earlier cases this doctrine was much disputed. But it is now generally conceded that wilfulness or wantonness may take the place of carelessness, and render the master liable to the same amount of compensation as in case of carelessness.
I admit, also, what is denied in many English and American cases, that this doctrine of holding the master liable for the wilful and wanton acts of the servant, to the same extent as if the act had been occasioned by carelessness, is applicable to corporations, as well as to individual masters.
*591 What I do deny is, that more than a full compensation can be recovered of the master, in any case, for the act of his 'servant, be that act careless, wilful, or otherwise, unless ■actually participated in or sanctioned by the master. Any- ' thing beyond this amount is mere punishment, and to allow it against the master in such case is to punish one man for the fault of another. It is to hold the master not only liable • civilly, but also criminally, for the acts of his servant. It is to punish the innocent for the crime of the guilty. "Where an actual loss has to be borne by one of two innocent parties — the master or the party injured by the careless or malicious act of the servant, — the law wisely determines that it shall fall upon the master, rather than the party injured. It is a hardship in either case, and a choice of evils, as it were. Justice to the parties would be effected, where that is practicable, by saddling the loss upon the agent, and leaving both the master and the injured party whole; and justice to the •public would be effected by punishment of the guilty agent, either in a criminal prosecution, or by vindictive damages, in •case the act involved malice or wilful wrong. But where ' that is not practicable, and the loss is made to fall upon the master, who is guilty, at most, of mere-carelessness or ignorance in the selection of an agent, any addition to the amount • of actual damages, for the benefit of a party not entitled thereto, and for the mere purpose of punishment, is contrary to all our ideas of justice, and is demanded by no considerations of public policy. It is also contrary to an almost unbroken current of authorities, both English and American.
: I confess myself at a loss to understand the precise grounds upon which the opinion of the court is jfiaced, or the extent . to which it goes. It seems to set out with the broad doctrine, that masters are liable to punitive damages in all cases where the servant committing the wrongful act would himself be ; liable. This cannot, however, be intended; for the subse- • quent reasoning and citation of authority is to the effect, that : corporations differ in this respect from other masters, and '■ are liable to punitive damages, because, unlike.other masters, ■ they cannot act except by agents. But the ultimate object *592 and drift of the reasoning goes apparently to establish a still narrower proposition, namely, that railroad corporations alone are liable to such damages, and that because of their “wealth,” their “power,” the non-residence of their stockholders, the friendly legislation accorded to them, and the fact that history shows them to be institutions which are “ inimical to individual and public interests.”
It seems to be supposed, that because a corporation can only act through its agents — because it is a mere ideal entity — it must therefore be punished for the crimes of its agents. If this be true, it must be because the law so delights in punishment, that when it cannot find a guilty party to punish, it will punish the imiocent — the stockholders of the corporation. They are the real employers of the agent. Por the wrongful act of their agent, whether that act be one of mere carelessness, or one of wilfulness or malice, they should be held liable, as individual masters are, for full compensation to the injured party, and no more; and all matters of punishment should be left to be adjusted between the guilty agent and the public. Otherwise you punish the stockholders and creditors of the corporation, and the travelling public, for the crimes of the agent. If railroads are an evil and a nuisance, let them be suppressed, and let the “friendly legislation,” of which it is said they have been the recipients, be at once repealed. That the legislature have been “friendly” to railroads, is no reason why the judiciary should be unfriendly to them, and' discriminate against them in its adjudications. Without “wealth” it is impossible to build and maintain them, and in most cases it is impossible to do so without “stock owned outside the State.” As a general rale, the stock is obtained from unwilling subscribers, who are persuaded to take the same mainly from motives of public policy, and it yields but a meagre return. Every dollar of punitive damages assessed upon the corporation for the criminal act of the agent must be paid by these stockholders, or it must be assessed by the corporation upon the public who use its road, unless, indeed, the road passes into the hands of its creditors, and the loss is saddled upon them. *593 No considerations of justice demand that sufferers by the carelessness or wilfulness of the company’s agents shall be paid more than their actual loss; and surely no considerations of public policy require that an additional sum shall be, as it were, wantonly taken from either of the innocent parties named. The fact that a corporation is a mere ideal person, was at first held to be a reason for discriminating in its favor, by exempting it from liability for the amount of actual damage arising from the wrongful acts of its agents. It is a wide departure from this doctrine to hold, as the court seem to do in the present case, that its ideal character has the effect to make it liable, in addition to the compensation which the law exacts from other masters, to the punishment due to its criminal agent. To construct' and maintain a railroad is certainly a business not unlawful in itself. The very best and most careful of men cannot carry on the bnsi ness without the employment of agents, who may prove to be wanton,' wilful, and malicious, as well as careless and unskilful. To hold such employers criminally liable for the acts of such agents, is simply to hold them criminally liable for building and maintaining railroads. There is no English case to support any such doctrine, or to hold a party criminally liable, in any sense, for the act of his agent, unless where the business in which he was employed was in itself criminal or unlawful. The only American'case which can be cited in support of it is that of the R. R. Co. v. Bailey, 40 Miss. 453, decided in 1866. The court in that ease puts its decision, as I understand it, plainly upon the ground that the'building and maintaining of railroads is a business that ought to be disfavored. They speak of railroads as being built by “idle capital in search of splendid investments.” They say, in substance, that “ if they ” (the owners of the road) “ must introduce and engage in such a business,” they must take the consequences. Aside from this case, .the American doctrine on the subject is that expressed by the court in the case of Amiable Nancy, 3 Wheat. 546. The business in which the agent in that case was employed was barely lawful. It was that of privateering. The wrongful *594 act of the agent is denominated by the court “a gross and wanton outrage.” And yet the court say, that the owners of the vessel are “only bound to repair all the real injv/ries, and are not bound to the extent of puniti/oe or vindictive damages.” And the reason assigned by the court is, that “ the business, though not in its nature exempt from irregularities, was nevertheless authorized by law.”